**SINAI HOSPITAL OF BALTIMORE, INC., Appellant,**

v.

**Wayne L. HORVITZ, Individually and as National Director of the Federal Mediation and Conciliation Service, Appellee,**

and

**District 1199E, National Union of Hospital and Health Care Employees, RWDSR, AFL–CIO, Defendants.**

**No. 78–1863.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1979.

Decided May 1, 1980.

Leonard E. Cohen, Baltimore, Md. (Monte Fried, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for appellant.

M. David Vaughn, Associate Gen. Counsel (Scott A. Kruse, Gen. Counsel, Nancy B. Broff, Asst. Gen. Counsel, Federal Mediation and Conciliation Service, Washington, D. C., on brief), for appellee.

Before WINTER, RUSSELL and HALL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This case is largely a repeat of *Sinai Hospital of Baltimore, Inc. v. Scearce* (4th Cir. 1977) 561 F.2d 547. Both cases have their origin in the 1974 amendments to the National Labor Relations Act, bringing non-profit hospital employees within the coverage of the Act.[1] There is identity, both of parties and of relief sought. The validity of an establishment of a Board of Inquiry by the defendant Director of the Federal Mediation and Conciliation Services under § 183(a), 29 U.S.C. is the common issue. There are only two differences in the two cases. The first is of no significance. The earlier case involved the appointment of a Board after notice to the Director of termination of a labor contract between the Hospital and its employees on December 1, 1976, whereas the present case arises out of a notice of termination of such a contract two years later on December 1, 1978. The real point of difference in the two cases is the nature of the Hospital's challenge to the appointment. In the earlier case, the Hospital claimed invalidity because (a) the appointment of the Board was alleged to be untimely and (b) it was made "without formal findings of facts" in support of the Director's action. In deciding that case, this Court held the appointment untimely and thus found it unnecessary to address the second point of attack by the Hospital on the appointment.[2] In this case, on the other hand, the timeliness of the appointment is conceded, and the Hospital's claim of invalidity in the Board's appointment is directed at the absence of any specific findings of fact in support of the opinion of the Director justifying the appointment. This is the question we found unnecessary to decide in the earlier case.

The district judge held that, so long as the Director made his appointment within the prescribed time limits for such appointment and accompanied such appointment with an opinion on his part in the

1. The amendments are set forth and their purpose outlined in our previous decision and need not be repeated here. *See* 561 F.2d at 549–50.

2. *See* 561 F.2d at 554, n. 12.

*See also Affiliated Hospitals of San Francisco v. Scearce*, (N.D.Cal.1976) 418 F.Supp. 711, 715, *aff'd.* (9th Cir.) 583 F.2d 1097.

language of the statute, the appointment was valid, even though the Director did not set forth any findings of fact on which he based his opinion. He accordingly denied the Hospital any injunctive relief and dismissed the action. From this decision the Hospital has appealed. We affirm.[3]

There can be no dispute that the authority to establish a Board of Inquiry under § 183(a) is within the discretion of the Director. In fact, the Hospital recognizes this, for, in its letter to the Director prior to the appointment of the Board in this case, it described the power of appointment as "discretionary" and expressed the hope that the Director would "form the opinion that the establishment of a Board of Inquiry would be both unwarranted and improper under the statute and would not effectuate the purposes of the Act."

When any exercise of a discretionary power, which lacks the elements of a final resolution of the rights of either party and is simply advisory in character as it is in this case, it is generally held that the action is not subject to judicial review. *Fieldcrest Mills, Inc. v. OSHA,* (4th Cir. 1976) 545 F.2d 1384, 1386; Mezines, Stein and Gruff, 5 *Administrative Law,* § 48.03[1], pp. 48–7, 48–10 (1978). A recognized exception to this principle is that, whenever the Director's action, even though discretionary and intended to be non-reviewable, is contrary to the enabling statutory authority itself, it is subject to a limited right of judicial review. *Leedom v. Kyne,* (1958) 358 U.S. 184, 188, 79 S.Ct. 180, 183, 3 L.Ed.2d 210; *Arizona Power Authority v. Morton,* (9th Cir. 1977) 549 F.2d 1231, 1240,

cert. denied, 434 F.2d 835, 98 S.Ct. 124, 54 L.Ed.2d 97; *Grace Towers Ten. Ass'n. v. Grace Hous. Dev. Fund Co.,* (2d Cir. 1976) 538 F.2d 491, 496; cf., *Gravitt v. Southwestern Bell Tel. Co.,* (1977) 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1. That was the situation in our earlier case. Section 183(a) strictly limits the authority of the Director to establish a Board thereunder to the 30 day period after receipt by him of a notice of the termination. However, the appointment in that earlier case was beyond the 30 day period. The appointment of the Board under those circumstances was beyond the Director's statutory authorization and we so declared. *Sinai Hospital of Baltimore, Inc. v. Scearce, supra.* We do not have that situation here; the appointment was made within the 30 day period. We are concerned here solely with that provision of the statute which fixes the right of the Director to establish a Board if in his opinion "a threatened or actual strike or lockout affecting a health care institution will, if permitted to occur or to continue, substantially interrupt the delivery of health care in the locality concerned."

We do not understand there to be any dispute that this opinion is a necessary predicate for the exercise of the Director's power of appointment.[4] The point in dispute between the parties is whether, in certifying such opinion in the language of the statute, the Director must in addition supply detailed specific findings of fact in support of that opinion in order to provide a basis for judicial review of the Director's action. The Hospital asserts that such find-

---

**3.** Before the appeal was heard in this Court, the Hospital and the Union agreed upon a new contract. Normally a settlement of the issues moots an appeal. However, the Hospital contends that the issue presented by the appeal in this case is one "capable of repetition, yet evading review" and, like the timeliness issue decided in the earlier case, the issue in this case is not mooted by the agreement between the Hospital and the Union. We agree. *See* 561 F.2d at 552, and *Affiliated Hospitals of San Francisco v. Scearce,* 583 F.2d at 1099, n. 4.

**4.** *See Affiliated Hospitals of San Francisco v. Scearce,* 418 F.Supp. at 715:

"There may also be a question whether the action of the Director, even had it been timely, is supported by the findings required by the statute. There is nothing before the Court to show that the Director found, before establishing the board, that there was 'a threatened * * * strike or lockout affecting a health care institution * * * [which would] if permitted to occur * * * substantially interrupt the delivery of health care in the locality concerned * * *.' Such a finding would appear to be jurisdictional to the establishment of a board. Inasmuch as neither party raised the issue, and in view of the disposition of this matter, it is unnecessary to consider it here."

ings are required. Because of the district court's contrary conclusion the Hospital has appealed.

The contention of the Hospital on this appeal thus in essence poses the question whether the jurisdictional opinion prescribed by the statute is properly subject to judicial review. If it is, then, according to the Hospital, there must be supplementary findings of fact in order to provide a factual basis on which judicial review can be had. If, on the other hand, judicial review is inappropriate, such findings of fact are unnecessary. Since the statute does not in express terms preclude judicial review of the Director's appointment, the issue is whether nonreviewability is to be fairly inferred. *Morris v. Gressette*, (1977) 432 U.S. 491, 501, 97 S.Ct. 2411, 2418, 53 L.Ed.2d 506; *Switchmen's Union v. Board*, (1943) 320 U.S. 297, 301, 64 S.Ct. 95, 97, 88 L.Ed. 61. In resolving that issue, the Courts are generally guided by a consideration of three factors. These are [1] "the need for judicial supervision to safeguard the interests of the plaintiff;" [2] "the impact of review on the effectiveness of the agency in carrying out its congressionally assigned role;" and [3] "the appropriateness of the issues raised for judicial review." *Natural Resources Defense Council, Inc. v. S. E. C.*, (D.C. Cir. 1979) 606 F.2d 1031, 1044; *Davis Associates, Inc. v. Secretary, Dept. of Hous. & U. D.*, (1st Cir. 1974) 498 F.2d 385, 390; *Hahn v. Gottlieb*, (1st Cir. 1970) 430 F.2d 1243, 1249; *Kletschka v. Driver*, (2d Cir. 1969) 411 F.2d 436, 443; Saferstein, *Nonreviewability: A Functional Analysis of "Committed to Agency Discretion"*, 82 Harv.L.Rev. 367, 371 (1968).

 Measured by these standards or factors, the opinion of the Director on which he bases his establishment of the board is manifestly not judicially reviewable. In the first place, there is no "need for judicial supervision" of the exercise by the Director of his discretionary power "in order to safeguard the interest of" the Hospital. The board has no substantive adjudicatory powers; its recommendations are purely advisory, without binding authority on either em-

ployer or union. The board is in effect no more than a mediating arm of the Director. Absent any prejudice or harm to the Hospital from the board's establishment and operation, and we find none, there can be no need for judicial supervision of the board's appointment. We find no merit in the contrary argument of the Hospital that the failure to participate in the proceedings of the board may be an unfair labor practice and this gives the opinion the necessary finality and possible prejudice in the appointment to support a requirement for judicial review. The fact that the Hospital does not cooperate with the board by participating in its proceedings may be a labor violation but neither the board nor the Director has the power to make that decision. That decision is one solely for the National Labor Relations Board after a hearing at which the Hospital may justify its failure. *ITT v. Electrical Workers*, (1975) 419 U.S. 428, 444–45, 95 S.Ct. 600, 610–11, 42 L.Ed.2d 558.

Secondly and more importantly, the whole framework of the procedure under Section 183(a) is such that judicial review of the discretionary authority it grants to the Director would be largely negated if the establishment of the board is to be held subject to judicial review. The appointment of the board is but one step in providing a mediating procedure in the critical area of patient care. That procedure is intended to expedite and promote a speedy resolution of any differences between the health care institution and its employees over a new contract and to lead promptly to the execution of a new contract before the expiration of the existing labor contract. This legislative effort at promoting a speedy settlement arises out of "the public interest to insure the continuity of health care to the community and the care and well being of [hospital] patients." [5] The steps to be taken in achieving this end are carefully timed in the statute. Thus it provides for the introduction of the Director into the negotiations between the parties within thirty days after notice of termina-

---

5. U.S.Code Cong. & Admin.News, pp. 3946, 3949 (1974).

tion, if no agreement has been reached between the parties. If the Director determines that the negotiations are proceeding so slowly that a strike may be the result and that the establishment of a Board of Inquiry would help in his mediating efforts, he is authorized to establish such board. But he is required in that event to act expeditiously in the exercise of this power because of the importance of an early resolution before the date of termination of the existing contract. For this reason again the board is given a very strict time-frame within which to complete its inquiry. As is manifest from this summary, the whole procedure created by the Congress envisioned a prompt and steady succession of steps, each following the other, under a strict program, of time constraints designed to assure speedy use of all the authorized steps for assisting the parties in effecting a prompt settlement of the negotiations. If, however, the step of establishing a Board of Inquiry is to be subject to judicial review, the use of the board in the mediation, considering the tightly stated time constraint within which it must operate, would be completely nullified and frustrated. Either party to the contract negotiations could completely defeat any beneficial use of the board within the time period when the board could be of any value in the mediation simply by seeking judicial review of the board's establishment. It would by that expedient destroy the board's "effectiveness . . . in carrying out its congressionally assigned role."

Finally, it seems obvious that, where the establishment of the board does not adversely affect finally any substantial right of either party to the negotiations and when the jurisdictional circumstance on which the establishment rests is committed to the opinion of the Director to be exercised on the basis of his special expertise, that discretionary exercise is not an appropriate subject for judicial review. Thus considering all the factors under which judicial review is resolved, we are of the firm opinion that the Director's determination to establish a Board of Inquiry is not subject to judicial review, so long as he acts within the 30 day period after notice of the impending contract termination and files the jurisdictional opinion in the language of the statute.

The Hospital argues though, that even if the Director's opinion is not subject to judicial review, it must at least include in the opinion a statement that the negotiations between the parties have reached an "impasse" and that such an opinion is a definite jurisdictional requirement for the establishment of a board. We do not find the argument persuasive. The short answer would seem to be that the opinion required by the statute does not include the term "impasse." It is true that "impasse" is used later in the statute in discussing the work of the board. If, however, the appointment itself were delayed until an "impasse" had been reached, a substantial part of the value of the board as a mediating device would be lost. The Congress recognized this. The Chairman of the Senate Labor and Public Welfare Committee in submitting the conference report on the statute, made this plain in his remarks:

> "The conferees agreed that such a (60 day cooling off) procedure might have the opposite effect, and heighten tension between the parties, as well as unnecessarily prolong any labor dispute in which the procedures were involved . . .. The *Senate conferees offered an amendment to the House provision that will permit the Director of the Federal Mediation and Conciliation Service to convene an impartial board of inquiry to help settle a potential or existing labor dispute before it reaches the critical strike stage . . ..*"[6]

This, it seems to us, makes clear that the Director was not to delay the appointment of a board until an "impasse" had been reached in the negotiations and he need not include such a statement in his jurisdictional opinion in support of the board's establishment.

---

6. Legislative History of the Coverage of Nonprofit Hospitals under the National Labor Relations Act, 1974, Subcommittee on Labor of the Committee on Labor and Public Welfare, United States Senate, 93d Cong., 2d Sess., at pp. 360–61 (emphasis added).

The judgment of the district court is accordingly

*AFFIRMED.*